CHICAGO, ST. P., M. & O. RY. CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

No. 693.

PUBLIC LANDS—ATTACHMENT OF RAILROAD GRANT—PRIOR PRE-EMPTION.
  In order that a pre-emption settlement made under the act of 1841 on offered public lands should prevent the attachment of a subsequent railroad grant of the same land, it must have been followed by proof and payment by the settler within 12 months, as required by section 15; and where such proof and payment were not made, and after the expiration of the time therefor the railroad company filed its map of definite location, which brought the land within the limits of the grant, it passed to the company thereunder as if no pre-emption had ever attached.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Thomas Wilson, for appellants.
David F. Jones, for the United States.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

GROSSCUP, Circuit Judge. The action is brought under the Act of March 3, 1887, as amended by the Act of March 3, 1891, and the Act of March 2, 1896, making it the duty of the Attorney General to prosecute the necessary proceedings to cancel all patents, certification, and other evidences of title, theretofore issued for lands contained in railroad land grants, where such lands had been, for any cause, erroneously certified and patented by the United States to, and for the use, of the company claiming by, or under, the grant; provided that no patent to any lands held by bona fide purchasers

should be vacated or annulled. The decree of the Circuit Court appealed from found for the appellee, and ordered the cancellation of the patents of the land in dispute from the United States to the State of Wisconsin.

The land in question—the North West quarter of Section Seven (7), in Township Twenty-four (24) North, of Range Four (4) West, in the State of Wisconsin—was a part of an alternate section included within the description of the grant of the United States to the State of Wisconsin by Act of Congress June 3, 1856, substantially re-enacted May 5, 1864, in aid of the West Wisconsin Railway Company—as also within the description of the map of definite location filed June 9, 1865—and was subsequently certified and patented to the State of Wisconsin for the purpose named; having come, by mesne conveyance, from the State of Wisconsin to the appellant, the Chicago, St. Paul, Minneapolis and Omaha Railway Company.

The granting act, in each case, provided that in case it should appear that the United States had, when the lines and routes of the said roads were definitely fixed, sold any sections or parts thereof, or that right of pre-emption had attached to any section or part thereof, it should be lawful for any agent or agents, to be appointed by the Governor of the State, to select, subject to the approval of the Secretary of the Interior, from the lands of the United States nearest to the tier of sections above specified, as much land in alternate sections, or parts of sections, as should be equal to such lands as the United States had sold or otherwise appropriated, or to which the right of preemption had attached.

The contention of the appellee is that, by virtue of this provision, the quarter section involved in this suit was, in effect, lifted out of the grant. This contention is based upon the following facts:

November 27, 1855,—the quarter section in question being then offered lands—one Jacob Flick, a citizen of the United States entitled to preemption, entered upon the land, and filed with the register of the proper district a written statement describing the land settled upon, and declaring his intention to claim the same under the preemption provisions; but, though in the following spring the preemptor settled upon the land and improved it, no proof, affidavit, or payment was thereafter made, or attempted, within twelve months, as provided for in Section 15, Act Sept. 4, 1841.

The distinction between lands offered and lands unoffered, under the Act of 1841 and the Act of 1843 (the Acts applicable to the land in question) is summed up by the Supreme Court as follows: "Taking these two acts of 1841 and 1843 and reading them together, it is seen that there was a difference between unoffered and offered lands by reason of the fact that on unoffered lands the right or privilege to secure land by a preemption filing continued up to the commencement of the public sale whenever that might be, and if that right or privilege had not been exercised and the land was offered at public sale and not sold, it then became subject to private entry by the first applicant, while on offered lands the right or privilege to secure them by a preemption filing continued for twelve

months after the date of settlement, and if the preemptor failed to file the declaratory statement or make the proper affidavit within the twelve months, 'the tract of land so settled and improved shall be subject to the entry of any other purchaser'"; and it was held that a railroad company, coming in under a grant, in all substantial respects like the grant under consideration, after the expiration of such preemption, takes title under the grant and the filing of the map of location, as if no preemption had ever attached. Railroad Co. v. De Lacey, 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111. This decision settles the title of the north half of the quarter section in favor of the appellants. We need not inquire if Bever—a grantee of the railway company, having made valuable improvements—is a bona fide purchaser within the meaning of the Act.

The appellants ask no action respecting the decree in the Circuit Court, so far as it relates to the south half of the section. Indeed, the railway company offers to quit claim to the Flicks. We do not, for that reason, consider any questions that might be raised respecting this portion of the land.

The cause is reversed, with instructions to the Circuit Court to dismiss the bill, as to the north half of the quarter section; or to dismiss the bill altogether upon the execution and delivery, to the satisfaction of the court, of proper quit claim deeds by the Railway Company to the Flicks of the south half of the quarter section.